IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALINA SODEL and IVAN KAZNIYENKO, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 24 C 1886<br>) |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, USCIS CHICAGO FIELD OFFICE, and KEVIN RIDDLE, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Alina Sodel, a United States citizen, filed a Form I-130 petition on behalf of her husband, plaintiff Ivan Kazniyenko, with the defendant U.S. Citizenship and Immigration Services (USCIS). The I-130 petition, the first step to obtaining lawful permanent resident status, asks to classify a noncitizen as having a relationship to the petitioning citizen based on marriage. The USCIS denied the petition, concluding Kazniyenko was ineligible due to a prior fraudulent marriage. The plaintiffs sued USCIS, USCIS Chicago Field Office, and Field Office Director Kevin Riddle (collectively, USCIS) under the Administrative Procedures Act. The parties have filed cross-motions for summary judgment. For the reasons below, the Court grants Kazniyenko and Sodel's motion and denies USCIS's motion and remands the case to USCIS for further review.

## Background

The following facts are undisputed unless otherwise noted. Ivan Kazniyenko, a Ukranian citizen, last entered the United States in 2006 on a J-1 exchange visa. On November 27, 2007, he married his first wife, Moneca Burress. Burress filed an I-130 petition on behalf of Kazniyenko in February 2008, asking USCIS to classify him as the spouse of a United States citizen.

To evaluate this petition, the USCIS scheduled an interview with Kazniyenko and Burress for April 2009 in Florida. Kazniyenko and Burress asked to reschedule the interview in Chicago, where they both resided. The interview was rescheduled for June in Chicago to accommodate their request.

Kazniyenko and Burress separated in early 2009, before their scheduled interview. They ultimately divorced on September 21, 2009. They did not appear for their interview with USCIS, leading the agency to deny Burress's I-130 petition.

In January 2019, Kazniyenko and Alina Sodel married. Sodel filed an I-130 petition on behalf of Kazniyenko in May 2019. USCIS first interviewed them in October 2020 and, during the interview, questioned them about Kazniyenko's prior marriage.

USCIS subsequently sent Kazniyenko and Sodel a Request for Evidence asking for evidence showing that Kazniyenko's prior marriage with Burress was not fraudulent. USCIS is prohibited by statute from granting an I-130 petition to the benefit of a noncitizen who is or was involved in a fraudulent marriage. If the agency concludes that the noncitizen has been accorded or previously sought to be accorded immediate relative status as the spouse of a United States citizen via a past fraudulent marriage, it must deny the I-130 petition. *See* 8 U.S.C. § 1154(c).

USCIS's concerns stemmed from the results of a 2007 investigation by U.S. Immigration and Customs Enforcement (ICE) into a national marriage fraud ring.  The investigation, codenamed "Operation Honeymoon's Over," uncovered a scheme in which a noncitizen would first pay the ringleader, Bozhdar Bakalov, $10,000 to $20,000.  In return for the payment, Bakalov would recruit a "USC" (United States citizen) to marry and file immigration paperwork on behalf of the noncitizen.  Bakalov would then pay the citizen roughly $300 to $500 per month for approximately two years to secure the citizen's cooperation throughout the immigration process.

As part of its investigation, ICE recovered a large number of documents from Bakalov's computer.  Kazniyenko's and Burress's information was present on five of these documents:

1. The name "Ivan KAZNIYENKO" was present on a list titled "ALIEN."  The list also included Kazniyenko's country of origin, date of birth, and address.

2. The name "Meneca [sic] BURRESS" was present on a parallel list titled "USC."  The list also included her date of birth.

3. Burress's signature was present on a blank Form I-751, Petition to Remove Conditions on Residence, which would be filed by a noncitizen who was previously granted conditional residence.

4. On a document titled "Payments for July 2008:  CAN NOT BE PAID YET," the names "Meneca [sic] Burress / Ivan" were typed under the "Name" column, alongside a handwritten note to "Call Husband."  Under the "Signature" column, Burress's signature was present on a line labelled "$300.00."

5. On a document titled "Customer Balance Detail:  All Transactions," the names "Ivan Kaznienko [sic] / Meneca [sic] Burress" were above a list of invoices and payments.  The document indicated an initial payment of $7,000 made on April 10, 2008, and successive payments of $500 on April 25, May 29, July 14, July 30, and August 12.  Ten additional monthly invoices of $500, spanning from August 25, 2008 to July 25, 2009 went unpaid, leaving a balance of $5,000.

Kazniyenko and Sodel responded to USCIS's Request for Evidence with several documents detailing the full lifespan of Kazniyenko's relationship with Burress, hoping to show the marriage was not fraudulent. This included a marriage certificate, a divorce decree, joint tax forms, a lease agreement reflecting co-tenancy, electricity and gas bills issued to this leased address, Burress's driver's license that showed she was living at this leased address, photos of Kazniyenko and Burress together throughout their relationship, affidavits detailing Burress's domestic abuse of Kazniyenko, and Burress's criminal history.

USCIS remained unpersuaded. In June 2021, it issued a Notice of Intent to Deny (NOID) the petition to Kazniyenko and Sodel. USCIS alleged that Kazniyenko had entered into a fraudulent marriage with Burress that prohibited the agency from granting the I-130 petition. In support of this allegation, USCIS did not cite any recovered document in particular but instead generally noted that Kazniyenko and Burress's names and information had been found on documents in connection with a marriage fraud ring.

Kazniyenko and Sodel responded to the NOID in July, arguing that USCIS had relied on insufficient evidence to conclude Kazniyenko's marriage with Burress was fraudulent. USCIS then failed to act on Sodel's petition for roughly three years, leading Kazniyenko and Sodel to file a petition for writ of mandamus with the Court to compel adjudication of the I-130 petition. In response, USCIS scheduled a second interview with Kazniyenko and Sodel for May 2024.

During the interview, Kazniyenko and Sodel both testified under oath that Kazniyenko did not know the fraud ringleader Bakalov. When asked why Bakalov

would have his information, Kazniyenko speculated that Bakalov, a Bulgarian immigrant, could have gotten his information when Kazniyenko worked as a truck driver for a Bulgarian company.

Kazniyenko also testified about his relationship with Burress. He went into detail about how he met Burress and how his long hours working as a truck driver eroded their relationship. He explained that their initial separation was the result of her wanting to be with her son and parents in Indiana and that this separation contributed to their eventual divorce.

USCIS issued an amended NOID in June 2024. This time, the NOID went into detail on the evidence that it said connected Kazniyenko to the marriage fraud ring, citing and describing each document that included his and Burress's names. The NOID did not, however, make any reference to Kazniyenko's testimony detailing his marriage, separation, and eventual divorce. Kazniyenko and Sodel responded in July, arguing that the evidence was still insufficient to show marriage fraud. USCIS disagreed, and it denied Sodel's I-130 petition on August 6, 2024 for the same reasons as stated in the amended NOID.

USCIS, having adjudicated the I-130 petition as originally requested by Kazniyenko and Sodel, then moved to dismiss the present case as moot. After this motion was filed, the Court granted Kazniyenko and Sodel leave to amend their complaint. They filed an amended complaint challenging under the APA USCIS's denial of the I-130 petition. The Court therefore denied USCIS's motion to dismiss.

Both parties have now moved for summary judgment.

**Discussion**

The Administrative Procedures Act (APA) governs the Court's review of USCIS's denial of an I-130 petition. *See Sehgal v. Lynch*, 813 F.3d 1025, 1037 (7th Cir. 2016). Under the APA, a court's review of an agency determination is generally limited to the administrative record. *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009). A court may set aside an agency determination only if, based on the administrative record, the decision was "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with law." *Id.*; *see* 5 U.S.C. § 706(2)(A). The party seeking judicial review bears the burden of establishing that the agency determination should be set aside. *See Timov v. Riddle*, 742 F. Supp. 3d 802, 810 (N.D. Ill. 2024).

As the Seventh Circuit has noted, the various bases for setting aside an agency determination "overlap." *Orchard Hill Bldg. Co. v. U.S. Army Corp. of Eng'rs*, 893 F.3d 1017, 1024 (7th Cir. 2018). A determination is arbitrary and capricious if it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citation omitted). A determination is unsupported by substantial evidence "when the record lacks evidence that a reasonable mind might accept as adequate to support the conclusion." *Id.* (cleaned up).

Under these standards, "the scope of review is narrow." *Id.* (cleaned up). "[A] court must not substitute its judgment for that of the agency." *Id.* (citation omitted). Rather, a court simply ensures the agency "examined the relevant data and articulated a satisfactory explanation for its action," including a "rational connection between the

facts found and the choice made." *Ind. Forest All., Inc. v. U.S. Forest Sev.*, 325 F.3d 851, 859 (7th Cir. 2003) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983)) (cleaned up). "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dept. of Envt. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (cleaned up). In other words, "so long as a reasonable mind could find adequate support for the decision, it must stand." *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009).

Still, judicial review of an agency decision is not "toothless"—the "APA requires meaningful review." *Orchard Hill*, 893 F.3d at 1024 (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)). Just as a court must not substitute its own judgment for that of the agency, "the reviewing court should not attempt itself to make up for deficiencies in the agency's reasoning." *Id.* (cleaned up). The agency must "do its homework; decisions that overlook relevant evidence or lack a satisfactory answer do not pass muster." *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024). Therefore, although "[a] court . . . should deferentially examine an agency's work," it should "not rubber-stamp it." *Orchard Hill*, 893 F.3d at 1024

Finally, summary judgment does not modify this standard of review. *See J.N. Moser Trucking, Inc. v. U.S. Dept. of Lab.*, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004) ("[J]udicial review of an agency's final determination follows standards quite different from those applied in a typical summary judgment proceeding."). But because review "is based solely on the record of the administrative proceedings below," a court "does not take or consider new evidence" as it would on summary judgment. *Doe v. Johnson*,

7

No. 15 C 1387, 2017 WL 1151036, at *5 (N.D. Ill. Mar 28, 2017) (citing *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994)). Instead, "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Hunger*, 15 F.3d at 669.

### A. I-130 petition procedures

Before proceeding to the substance of Kazniyenko's and Sodel's claim, the Court summarizes the I-130 petition procedures that shape its review of USCIS's denial. "'Generally, a noncitizen must obtain an immigrant visa in order to become a lawful permanent resident and legally remain in the United States." *Timov*, 742 F. Supp. 3d at 810 (citing 8 U.S.C. §§ 1151–54). One method of obtaining a visa starts with a Form I-130 petition. A married United States citizen may file with the Attorney General an I-130 petition on behalf of a noncitizen spouse asking to classify the spouse as an immediate relative of the petitioning citizen. 8 U.S.C. § 1154(a)(1)(A)(i). USCIS evaluates I-130 petitions on behalf of the Attorney General. *See* 6 U.S.C. § 271(b); *Timov*, 742 F. Supp. 3d at 810.

Under the Immigration and Nationality Act, the Attorney General is prohibited from granting an I-130 petition if the noncitizen beneficiary was involved in a fraudulent marriage:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). Thus USCIS (on behalf of the Attorney General) may not grant an

8

I-130 petition if the noncitizen "has received (or tried to receive) immigration benefits through a sham marriage." *Ogbolumani*, 557 F.3d at 733.

In proceedings before USCIS, the burden is on the petitioner to establish by a preponderance of the evidence eligibility for the benefit sought. *See Timov*, 742 F. Supp. 3d at 811 (citing *Matter of Brantigan*, 11 I. & N. Dec. 493, 495 (BIA 1966)). But if USCIS suspects this "sham marriage bar" applies, it has the initial burden of identifying "substantial and probative evidence" that the marriage in question was "fraudulent from its inception." *Id.* at 811; *see Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010). To satisfy its burden, USCIS must examine "all of the relevant evidence" and determine "whether such evidence, when viewed in its totality," establishes "that the marriage is fraudulent." *Matter of P. Singh*, 27 I. & N. Dec. 598, 607 (BIA 2019). Both the seriousness of the accusation and its severe consequences have led the Board of Immigration Appeals to require a "relatively high" standard for establishing marriage fraud: the totality of the evidence must show "it is more than probably true" that a marriage was fraudulent. *Anyaso v. Mayorkas*, 716 F. Supp. 3d 642, 651 (N.D. Ill. 2024) (quoting *Matter of P. Singh*, 27 I. & N. Dec. at 607). Despite this high bar, "direct evidence is not necessary to establish marriage fraud." *Matter of P. Singh*, 27 I. & N. Dec. at 608. "[V]ery strong circumstantial indicia" can suffice. *Anyaso*, 716 F. Supp. 3d at 651.

If USCIS fulfills its initial burden, the burden then shifts to the petitioner to show the marriage was bona fide, i.e., not entered into to evade immigration laws. *Timov*, 742 F. Supp. 3d at 811 (citing *Matter of Laureano*, 19 I. & N. Dec. 1, 3 (BIA 1983)). A marriage is bona fide if "the couple intended to establish a life together at the time of

9

their marriage." *Id.* (citing *Yong Hong Guan v. I.N.S.*, 998 F.2d 1017 (Table), 1993 WL 265107, at *2 (7th Cir. July 16, 1993)). "Evidence that may indicate a couple's intent at the time they were married includes, but is not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." *Id.* (quoting *Matter of Laureano*, 19 I. & N. Dec. at 2). The "conduct of the parties after their marriage" may also be relevant, but "only to the extent that it bears on the subjective intent of the parties at the time they were married." *Yong Hong Guan*, 1993 WL 265107, at *2.

Finally, and significantly, a petitioner is only required to prove the marriage was not *entirely* motivated to evade immigration laws. "Only a marriage entered into *solely* to obtain immigration benefits not otherwise available without the marriage has as its purpose the evasion of immigration laws." *United States v. Edwards*, 869 F.3d 490, 495 n.1 (7th Cir. 2017) (quoting *Eid v. Thompson*, 740 F.3d 118, 124 (3d Cir. 2014)) (cleaned up).

**B.    Review**

Kazniyenko and Sodel argue that USCIS acted in an arbitrary and capricious manner by failing to consider relevant evidence. They contend USCIS did not consider certain evidence indicating that Kazniyenko and Burress had a bona fide marriage, including: Kazniyenko's sworn testimony on how he met Burress and the circumstances that ultimately resulted in their divorce, letters submitted by acquaintances detailing Burress's abuse of Kazniyenko, Burress's criminal history, and several documents indicating Kazniyenko and Burress cohabitated.

USCIS disagrees, arguing it "listed all evidence that was submitted." Defs.' Reply Mem. in Supp. of their Cross-Mot. for Summ. J., at 3. But "listing" evidence is not the standard. USCIS must "*consider* the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Mansour v. I.N.S.*, 230 F.3d 902, 908 (7th Cir. 2000) (quoting *Becerra-Jimenez v. I.N.S.*, 829 F.2d 996, 1000 (10th Cir. 1987)). Listing evidence does not reflect it was considered—it is (or at least may be) simply a rote step in the preparation of USCIS's written or oral decision.

USCIS then pivots, arguing that it did analyze the listed evidence by commenting on the items of evidence presented. It is true that for some of the evidence listed, there are comments by USCIS reflecting analysis. For example, after noting that Kazniyenko submitted Burress's social security number verification and Indiana identification card, USCIS stated "[i]t is not clear how this is supposed to serve as evidence of marital union." Certified Admin. R., at 3. The analysis here may not be detailed, but it is sufficient to show this item of evidence actually was considered. *See Ogbolumani*, 557 F.3d at 734–35 ("[W]e have never required the agency to write an exegesis on every contention raised.") (cleaned up).

Yet much of the evidence is not referenced at all other than in the aforementioned list. The lease agreement, joint tax statement, and photographs of Kazniyenko and Burress together are all left unannotated and otherwise unaddressed. USCIS need not "discuss all the evidence before it in detail." *Hassan-McDonald v. Mayorkas*, No. 21 C 3931, 2022 WL 170045, at *4 (N.D. Ill. Jan. 19, 2022). But there must be something to indicate that the agency at least *considered* the relevant

evidence. *See Mansour*, 230 F.3d at 908; *Smith*, 103 F.4th at 1252. As both the BIA and courts in this district have recognized, "property leases, income tax forms," and "other evidence regarding courtship, . . . shared residence, and experiences" are relevant to whether a marriage was bona fide at its inception. *See Timov*, 742 F. Supp. 3d at 811 (quoting *Matter of Laureano*, 19 I. & N. Dec. at 2). USCIS's mere listing of this evidence does not indicate it was actually considered, nor is there anything in USCIS's decision suggesting that it was taken into account at all.

USCIS contends that because some of the listed evidence was analyzed, it is likely that the rest was considered too. That is a *non sequitur*. But even if one accepts this proposition, the denial of the I-130 petition makes no mention of Kazniyenko's testimony concerning his relationship with Burress. His testimony, which detailed how his relationship with Burress began and the circumstances that resulted in their separation and divorce, is undoubtedly relevant: it explains a natural start and end to their relationship, rebutting USCIS's allegations of a fabricated marriage. Yet nowhere in the denial does USCIS address, or even mention, these details.

USCIS responds in its briefing that Kazniyenko's testimony is uncorroborated by documentary evidence and is therefore unpersuasive. This reasoning, however, does not appear in USCIS's denial. The Court cannot accept post-hoc rationalizations for why certain evidence was supposedly disregarded, as the Court cannot "make up for deficiencies in the agency's reasoning." *Orchard Hill*, 893 F.3d at 1024 (cleaned up); *see also SEC v. Chenery Corp.* 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."). USCIS's failure to

12

acknowledge Kazniyenko's relevant testimony is alone grounds for setting aside its decision. *See Bristow v. Mayorkas*, No. 22 C 991, 2024 WL 1328825, at *8 (N.D. Ill. Mar 28, 2024) (quoting *Lam v. Holder*, 698 F.3d 529, 534 (7th Cir. 2012)) ("[F]ailure to . . . consider factors acknowledged to be material to such an exercise—such as the wholesale failure to consider evidence—[is] an error of law.").

Perhaps the contention is that the evidence supporting USCIS's fraud-ring narrative was so strong that the agency did not have to consider the other relevant, contrary evidence. But the standard governing USCIS's marriage fraud determination and the Court's review of agency decision-making require USCIS to consider all relevant evidence. *Matter of P. Singh*, 27 I. & N. Dec. at 607 ("The application of the 'substantial and probative evidence' standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes . . . the marriage is fraudulent."); *Smith*, 103 F.4th at 1252 ("[D]ecisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster.").

This requirement is not a burden unique to agency immigration determinations. Other decisions reviewed under the arbitrary and capricious and substantial evidence standards must also address the relevant evidence. For example, the Social Security Administration must "must evaluate all relevant evidence" before deciding on a claimant's benefit eligibility. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Ignoring "entire lines of contrary evidence" is grounds for remand. *Id.* at 592; *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts

13

that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Nor is the evidence of marriage fraud as ironclad as USCIS purports. The evidence connecting Kazniyenko to the marriage fraud ring is entirely circumstantial. Direct evidence, of course, is not required, but "[m]ost of the Federal court cases addressing marriage fraud . . . involve direct evidence of fraud, often a sworn statement admitting to the fraud that has not been credibly refuted or rebutted." *Matter of P. Singh*, 27 I. & N. Dec. at 608. When USCIS only relies on circumstantial evidence to establish marriage fraud, evidence indicating a bona fide marriage only becomes more significant. Evidence "countering USCIS's narrative detract[s] from [] USCIS's ability to infer from only circumstantial evidence that [the plaintiffs] did not intend to establish a life together." *Bristow*, 2024 WL 1328825, at *8 (quoting *Anyaso*, 716 F. Supp. 3d at 654). And although USCIS's initial burden to show a fraudulent marriage is high, a petitioner's burden to prove a bona fide marriage is not, especially because "a good-faith marriage motivated only *in part* by immigration benefits is not illegal." *Id.* (quoting *Edwards*, 869 F.3d at 495 n.1).

To be clear, the Court is not undertaking a re-weighing of the evidence—that is USCIS's job. *See Timov,* 742 F. Supp. 3d at 816; *Orchard Hill*, 893 F.3d at 1024. Rather, the Court is emphasizing why it is important USCIS "do[es] its homework." *See Smith*, 103 F.4th at 1252. The consequences of a finding of marriage fraud are severe and permanent. USCIS may determine, in its own weighing of all the relevant evidence, that Kazniyenko engaged in marriage fraud. But it must actually weigh all the evidence, not ignore accounts and documents that conflict with its narrative. Because USCIS's

denial does not reflect that USCIS considered relevant evidence, the Court must set its determination aside as arbitrary and capricious.

## Conclusion

For the reasons stated above, the Court grants Kazniyenko and Sodel's motion for summary judgment and denies USCIS's motion. USCIS's decision denying the I-130 petition is vacated. The matter is remanded to the agency for further review. The Clerk is directed to enter judgment stating: USCIS's decision denying the I-130 petition of Alina Sodel on behalf of Ivan Kazniyenko is vacated. The matter is remanded to USCIS for further proceedings.

Date: March 17, 2025

_____
MATTHEW F. KENNELLY
United States District Judge